**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **DOROTHY LLOYD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:22-cv-195 (MTT)** |
| | ) | |
| **TWIN CEDARS YOUTH AND FAMILY** | ) | |
| **SERVICES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## ORDER

Defendant Twin Cedars Youth and Family Services, Inc. moves for summary judgment on plaintiff Dorothy Lloyd's Americans with Disabilities Act ("ADA"), Rehabilitation Act, Title VII of the Civil Rights Act of 1964, Family and Medical Leave Act ("FMLA"), and Fair Labor Standards Act ("FLSA") claims.  Doc. 13.  For the following reasons, Twin Cedars' motion (Docs. 13; 27) is **GRANTED in part and DENIED in part**.

### I. BACKGROUND[1]

Twin Cedars provides housing, foster care, and transportation services for children.  Docs. 13-2 ¶ 1; 21-1 ¶ 1.  Lloyd worked at Twin Cedars' Macon location as an administrative coordinator.  Docs. 13-2 ¶¶ 2, 4-5; 21-1 ¶¶ 2, 4-5.  Her "duties included managing the switch board, working with the HR coordinator, delivering messages, greeting visitors, distributing mail, managing petty cash, cash[ing] checks, and

---

[1] Unless otherwise stated, these facts are undisputed and are viewed in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

submitting MVRs, background checks, and drug screens."  Docs. 13-2 ¶ 9; 21-1 ¶ 9.

Beyond these duties, Lloyd "would also shop for supplies, take kids to appointments,

make rounds of the cottages for inspection, take vehicles to the shop, and escort

visitors."  Docs. 13-2 ¶ 10; 21-1 ¶ 10.  She typically worked 8:00 A.M. to 5:00 PM five

days a week, but she sometimes shopped for supplies after hours.  Docs. 13-2 ¶¶ 7, 11;

21-1 ¶¶ 7, 11.  When she worked normal hours, she clocked in and out.  Docs. 13-2 ¶ 8;

21-1 ¶ 8.  When she worked outside normal hours, Lloyd let Janet Lawson, Twin

Cedars' assistant director, "know the amount of time she spent getting supplies after

work."  Docs. 13-2 ¶ 13; 21-1 ¶ 13.

Following her September 2, 2020 neck surgery for arthritis, Lloyd took medical

leave.  Docs. 13-2 ¶¶ 15-16; 21-1 ¶¶ 15-16.  On an "FMLA form" provided by Twin

Cedars, Lloyd's doctor wrote "no work until further notice" and that her work status

would be discussed at a follow-up appointment on October 6, 2020.  Docs. 13-2 ¶¶ 17,

19; 15-2 at 2; 21-1 ¶¶ 17, 19.  At the October 6 appointment, her doctor gave her a

November 19, 2020 return date.  Docs. 13-2 ¶ 20; 21-1 ¶ 20.  However, on November

19, 2020, Lloyd's "doctor recommended that [she] stay out of work *indefinitely* until

[further] surgery could be rescheduled."  Docs. 13-2 ¶¶ 15, 31; 21-1 ¶¶ 15, 31

(emphasis added).  Lloyd received a combination of sick, holiday, and vacation pay

during most of her leave.  Docs. 13-2 ¶¶ 76-77, 79-80, 82-85, 87; 21-1 ¶¶ 76-77, 79-80,

82-85, 87.

Lloyd worked while on leave.  On October 29, 2020, she "review[ed] new hire

packages at her supervisors' request" and "stayed there until around lunch time."  Docs.

13-2 ¶ 21; 21-1 ¶ 21.  She also went to Twin Cedars on November 6, 2020 and two

other occasions—"one day in which she got air freshener and one day in which she got hand sanitizer."  Docs. 13-2 ¶¶ 22-23; 21-1 ¶¶ 22-23.  It is unknown whether this time was recorded.  Docs. 13-2 ¶ 14; 21-1 ¶ 14.

On December 2, 2020, Neal Phillips, Twin Cedars' human resources director, asked Lloyd "when she could return to work," adding that "it was critical that somebody be in the front office 'at all times.'"  Docs. 13-2 ¶¶ 32, 33; 21-1 ¶¶ 32, 33.  Lloyd replied that she would have to call her doctor.  Docs. 13-2 ¶ 32; 21-1 ¶ 32.  She then visited her doctor, who "said that he could allow her to return to work on December 8, 2020 with certain restrictions," specifically, no pushing, pulling, or lifting over 10 pounds.  Docs. 13-2 ¶ 34; 21-1 ¶ 34.  Lloyd sent Lawson a picture of her return-to-work form with the December 8 return date and restrictions.  Docs. 13-2 ¶ 36; 21-1 ¶ 36.

On December 5, 2020, Lloyd received a letter from Twin Cedars dated December 4, 2020 that stated, in pertinent part:

> As you may know, your 12 weeks of FMLA expired on November 25. You have been out of work since September 2.  The original Certification of Health Care Provider indicated a probable absence of 4 weeks duration. Following your October 6 appointment, we received a Return to Work statement putting you out until your appointment on November 19. Following this appointment, we received another Return to Work statement putting you out "until further notice- pending surgery'.  On December 2, we received yet another statement authorizing your return to work on December 8 with work limitations of 'no push, pull or lifting over 10 pounds pending surgery."  *We have looked to see if there was a job at GICH that meets the abovementioned work limitations as an accommodation and there is none.*  Accordingly, you cannot return to work on December 8, as we are moving forward with terminating your employment effective today.

Doc. 15-11 (emphasis added).  In short, Twin Cedars claimed it had no job that "met" work restrictions set by Lloyd's doctor.  Thus, Twin Cedars took the position that Lloyd could not "return to work on December 8."  *Id*.  Based on that, Twin Cedars fired her.

Twin Cedars' separation notice gave the same reason for Lloyd's termination—"Out on non-FMLA leave.  Unable to accommodate work limitations."  Doc. 15-12.

Notwithstanding that stated reason for Lloyd's discharge, it is undisputed that Lloyd's job did not require her to push, pull, or lift over ten pounds.  Docs. 13-2 ¶ 35; 21-1 ¶ 35.

Lloyd sued Twin Cedars under Title VII, the ADA, the Rehab Act, the FMLA, and FLSA based on its alleged misconduct during her leave.  Doc. 1 ¶¶ 92-194.  Twin Cedars moves for summary judgment on each of her claims.[2]  Doc. 13.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson*, 477 U.S. at 247.  The movant may support its assertion that a

---

[2] In lieu of a response to Twin Cedars' motion as to her FLSA overtime and Title VII claims, Lloyd, in a footnote, states: "While Plaintiff submits that her claims for discrimination based on race in violation of Title VII and unpaid overtime in violation of the FLSA are indeed valid, Plaintiff makes no argument herein in response to Defendant's Motion with regard to such claims."  Doc. 21 at 9 n.1.  Thus, Lloyd has abandoned those claims and Twin Cedars is entitled to summary judgment on them.  *See Coal. For the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000); *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014).

Lloyd's counsel has a practice of filing a "broadside" of claims and abandoning many of those claims only after a summary judgment motion has been filed.  *See Gray v. Bd. of Trs. of Ga. Mili. Coll.*, 2023 WL 5959428, at *3 n.2, *4 (M.D. Ga. Mar. 7, 2022); *Washington v. Gov't Emps. Ins. Co.*, No. 5:22-cv-457-MTT, Doc. 20 at 1 (M.D. Ga. Dec. 1, 2023); *Helton v. Geo. D. Warthen Bank*, 2023 WL 2266136, at *15 n.14 (M.D. Ga. Feb. 28, 2023); *Richardson v. Macon-Bibb Cnty.*, 2022 WL 2318501, at *5-6 (M.D. Ga. June 28, 2022); *Richardson v. Davis*, 2022 WL 2532167, at *2, *3 n.8 (M.D. Ga. July 7, 2022).  The Court is troubled by this practice.

fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id*. at 1438 (quoting *Celotex*, 477 U.S. at 324) (alterations in original).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id*.

The burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc*., 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or is not significantly probative' of a disputed fact."  *Id*. (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), "the court may … consider the fact undisputed for purposes of the motion[.]"  Fed. R. Civ. P. 56(e)(2).  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge …

[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in h[er] favor."  *Anderson*, 477 U.S. at 255.

## III. DISCUSSION[3]

### A. ADA/Rehab Act Discrimination Claims[4]

The ADA and Rehab Act make it unlawful to discriminate against an otherwise qualified individual based on her disability.  29 U.S.C. § 794(a); 42 U.S.C. § 12112.[5] Discrimination under the ADA and the Rehab Act includes an employer's failure to provide reasonable accommodation and adverse employment action against an employee because of (ADA) or solely by reason of (Rehab Act) her disability.[6]  *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1262 (11th Cir. 2007); *Ellis*, 432 F.3d at 1326. Lloyd alleges Twin Cedars did both.

---

[3] The Court notes that Lloyd's counsel failed to take depositions.  The only deposition taken was Lloyd's by Twin Cedars.  This too is not unusual for Lloyd's counsel.  *See, e.g., Gordon v. Bibb Cnty. Sch. Dist.*, No. 5:21-cv-143-TES (M.D. Ga. Apr. 23, 2021); *Assad v. Air Logistics and Eng'g Sols., LLC*, No. 5:20-cv-135-TES (M.D. Ga. Apr. 8, 2020); *Johnson v. Cirrus Educ. Grp., Inc.*, No. 5:20-cv-256-MTT (M.D. Ga. July 1, 2020); *Washington v. Gov't Emps. Ins. Co.*, No. 5:22-cv-457-MTT (M.D. Ga. Dec. 27, 2022).

[4] Twin Cedars argues that it is not a "covered employer" under the Rehab Act.  Docs. 13 at 10-11; 28 at 6-7.  But as Lloyd points out, this argument is meritless.  Doc. 21 at 11-14.  The Rehab Act covers "any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  "Program or activity" includes organizations that are "principally engaged in the business of providing education, health care, housing, social services, or parks and recreation."  29 U.S.C. § 794(b)(3)(A)(ii).  Lloyd provided unrebutted evidence that Twin Cedars receives federal funding.  Doc. 21 at 13.  And by its own definition, Twin Cedars is an organization that provides social services for children "like housing, foster care, and transportation."  Doc. 13-2 ¶ 1.  The Court cannot say as a matter of law that Twin Cedars is not a covered employer under the Rehab Act.

[5] "The standard for determining liability under the Rehabilitation Act is the same as that under the" ADA. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("[C]ases involving the ADA are precedent for those involving the Rehabilitation Act.").

[6] The causation standard is "sole reason" under the Rehab Act and "but-for" under the ADA.  29 U.S.C. § 794(a); *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016); *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008).

1. *Failure to accommodate*

To establish a prima facie case of discrimination based on an employer's failure to accommodate, a plaintiff must show that (1) she is disabled, (2) she is qualified,  (3) her employer failed to provide her with a reasonable accommodation, and (4) "that failure negatively impact[ed] [her] hiring, advancement, discharge, compensation, training, [or] other terms, conditions, and privileges of [her] employment."  *Holly*, 492 F.3d at 1255-56, 1263 n.17; *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023).  Although Twin Cedars "disputes" whether Lloyd had a disability and was qualified, it does not argue either prong and instead "focus[es] its analysis on" causation.  Doc. 13 at 15.  Accordingly, the Court will assume, without deciding, that Lloyd was disabled and qualified, and will limit its analysis to whether Twin Cedars failed to provide a reasonable accommodation.

The employee, at the summary judgment stage, bears the burden of producing evidence that a reasonable accommodation was available.  *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255-56 (11th Cir. 2001).  "An accommodation can qualify as 'reasonable,' and thus be required by the ADA, only if it enables the employee to perform the essential functions of the job."[7]  *Lucas*, 257 F.3d at 1255.  "'Essential functions' are the fundamental job duties of a position that an individual with a disability is actually required to perform."  *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000); 29 C.F.R. § 1630.2(n)(1).  Where an employee cannot identify a reasonable accommodation, "the employer has no affirmative duty to show undue hardship."

---

[7] The Eleventh Circuit questioned this definition in *Beasley*.  69 F.4th at 756-58.  However, the concurrence in *Beasley* argued the definition as stated in *Lucas* was not dicta and is a governing rule.  *Id.* at 761-62 (Luck, J. concurring).

*Frazier-White*, 818 F.3d at 1255.  Finally, because "an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination," the "*McDonnell Douglas* burden-shifting [framework] is not applicable to reasonable accommodation cases."  *Holly*, 492 F.3d at 1262; *Nadler v. Harvey*, 2007 WL 2404705, at *9 (11th Cir. Aug. 24, 2007).

The parties agree "that the only accommodation [Lloyd] sought is one that would accommodate her restriction of not being able to push, pull, or lift more than ten pounds."  Docs. 21 at 17; 28 at 8.  But they also agree that Lloyd's job did not require her to push, pull, or lift over ten pounds.  Docs. 13 at 12-14; 28 at 9.  In her Equal Employment Opportunity Commission ("EEOC") charge, she stated: "Ms. Lloyd did not anticipate the doctor's restrictions being a problem since her job did not require her to lift heavy objects."  Doc. 15-16 at 3-4.  In her complaint, Lloyd states, "there was nothing listed in [her] job description, nor the actual demands of her job, that required [her] to exert herself physically," she "did not anticipate the doctor's restrictions being a problem, particularly given that her job had never required her to lift heavy objects," and that pushing, pulling, or lifting items over ten pounds were not "tasks required under [her] job description, nor were they activities that had previously been required of [her] during her tenure."  Doc. 1 ¶¶ 26, 63, 121.  And at her deposition, Twin Cedars asked: "So did your job require you to do—you know, push, pull, or lift things over 10 pounds?"  Doc. 15 at 119:11-13.  Lloyd responded: "No, sir."  *Id*. at 119:14.  Twin Cedars further asked: "So you said, or you've testified today, that you didn't really have to lift any heavy

objects; right?  You didn't really have to do things that weighed more than 10 pounds; correct?"  *Id.* at 156:24-157:3.  Lloyd responded: "Right."[8]  *Id.* at 157:4.

Accordingly, Lloyd has no failure to accommodate claim.  "[D]iscrimination in the form of a failure to reasonably accommodate is actionable under the ADA *only* if that failure negatively impacts the employee's hiring, advancement, discharge, compensation, training, and other terms, conditions, and privileges of [her] employment."  *Beasley*, 69 F.4th at 754 (emphasis added).  Because her restrictions did not affect her ability to do her job, Twin Cedars' failure to accommodate those restrictions is not actionable.  *See D'Onofrio v. Costo Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020) ("[I]f an employee does not require an accommodation to perform her essential job functions, then the employer is under no obligation to make an accommodation, even if the employee requests an accommodation that is reasonable and could be easily provided.").

Because Twin Cedars had no duty to accommodate Lloyd for something she was not required to do in the first place, Twin Cedars is entitled to summary judgment on Lloyd's failure to accommodate claim.[9]

---

[8] Lloyd also testified that she occasionally pushed, pulled, or held kids aged ten to eighteen and that she told her doctor her job required her to push, pull, or lift ten pounds.  Doc. 15 at 157:17-158:2, 178:20-179:3.  However, she provides no argument regarding whether that was required of her, and the record does not support that conclusion.  Doc. 15 at 119:11-14, 156:24-157:4, 157:17-158:2, 178:20-179:3.  Rather, Lloyd states that "just because [she] occasionally did things at work requiring her to lift, push, or pull items weighing more than 10 pounds, did [sic] not necessarily mean those were tasks that [Twin Cedars] required her to do."  Doc. 21-1 ¶ 55; s*ee* Doc. 21 at 17.

[9] Lloyd makes a passing argument that Twin Cedars was required and failed to engage in the interactive process to determine a reasonable accommodation.  Doc. 21 at 17-18.  However, an employer has no duty to investigate possible accommodations where the employee does not require an accommodation to do her job.  *See Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) ("[W]here a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant.").

*2. Adverse employment action*

Although Twin Cedars had no duty to accommodate, there is a factual dispute as to whether Lloyd's disability played a role in her termination.

After November 19, 2020, Lloyd's next communication with Twin Cedars was not until December 2, 2020 when Phillips informed her she was needed back in the office. Doc. 15 at 72:1-20, 118:4-10.  Lloyd told Phillips she would need to speak to her doctor, and Phillips responded that he would get back to her after he spoke with Linda Finely, her supervisor, and Lawson.  *Id*. at 118:20-23.  Phillips did not mention that Lloyd's FMLA had expired and did not provide her with a required return date.  *Id*. at 114:13-19, 179:15-18.  Lloyd then visited her doctor—the same day she spoke to Phillips—who provided a note stating she could return to work on December 8, 2020 as long as she did not push, pull, or lift over ten pounds.  Docs. 15 at 72:6-24, 112:12-21; 15-10.  She forwarded that doctor's note to "everybody that [she] needed to," including Phillips, Finley, and Lawson.  Doc. 15 at 72:23-24, 89:25-90:11.  The next day, Phillips notified Lloyd that she had been terminated because she was out on medical leave and Twin Cedars could not find a position that "met" her work restrictions.  Doc. 21-6.  But the undisputed evidence demonstrates that Lloyd's position did not require her to push, pull, or lift over ten pounds.

These are unusual facts.  Twin Cedars told Lloyd that she needed to return to work, she dutifully received approval from her doctor that she could, she informed Twin Cedars, and then Twin Cedars fired her for the stated reason that it could not accommodate her disability, even though it is undisputed that she could perform her job duties notwithstanding the restrictions imposed by her disability.  Regardless of the

analytical approach—direct evidence, *McDonnell Douglas*, or convincing mosaic—it is clear that a reasonable jury could find that Twin Cedars fired Lloyd because, or solely by reason, of her disability.  *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("[T]he plaintiff will always survive summary judgment if [she] presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."); *Tynes v. Fla. Dep't of Juvenile Just.*, 88 F.4th 939, 947 (11th Cir. 2023) ("[T]he analysis turns on the substantive claims and evidence in the case, not the evidentiary framework.").

Accordingly, Twin Cedars is not entitled to summary judgment on Lloyd's disability discrimination claim.

## B. FLSA Minimum Wage

Twin Cedars argues Lloyd cannot show it violated FLSA when it failed to pay her a regular wage for work done during her FMLA leave.  Doc. 13 at 21-22.

FLSA requires employers to pay employees a minimum wage.  29 U.S.C. § 206(a).[10]  Where, as here, the employer fails to maintain proper records of wages, the Supreme Court has held that "[t]he solution … is not to penalize the employee by denying [her] any recovery on the ground that [she] is unable to prove the precise extent of uncompensated work."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293-94 (D.C. Cir. 1972).  Rather, "an employee has carried out [her] burden if [she] proves that [she] has in fact performed work for which [she] was

---

[10] FLSA covers employees who are either (1) "engaged in commerce or in the production of goods for commerce," or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 206(a).  Because Twin Cedars does not challenge whether Lloyd is a covered employee under FLSA, the Court will proceed under the assumption that she is.

improperly compensated and if [she] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Id*.  "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negat[e] the reasonableness of the inference to be drawn from the employee's evidence."  *Id*. at 687-88.  Where the plaintiff has carried her burden, the damage is "certain" and "[t]he uncertainty lies only in the *amount* of damages arising from the statutory violation by the employer."  *Id*. at 688 (emphasis added).

Twin Cedars argues Lloyd cannot carry her "initial burden because all she has to support her claims are speculation and conjecture as to how long she worked while on leave"—"there is no way to calculate that number, and no documents that would have that number."  Docs. 13 at 22; 28 at 11.  However, Lloyd testified and provided supporting documentation as to six times she worked without regular compensation.

"On October 14, 2020, [she] prepared a handwritten accounting of petty cash and expenses purchased."  Docs. 15 at 122:24-25, 123:16-21, 124:5-10; 21-2 ¶ 3.  The contents of the handwritten note support her testimony.  Doc. 21-3.  On October 29, 2020, Lloyd went to Twin Cedars in the morning until lunch upon Lawson's request "to review some new hire packages."  Docs. 15 at 54:5-55:12; 21-1 ¶ 3.  On November 5, 2020, she "took [Twin Cedars'] checks to the bank."  Doc. 21-2 ¶ 3.  On November 6, 2020, she "reported to" Twin Cedars.  Docs. 15 at 206:3-6; 21-2 ¶ 3.  Text messages between Lloyd and Lawson confirm this testimony.  Doc. 21-4 at 1.  On November 23, 2020, Lloyd "prepared a document that was entitled a 'Census,' which provided information concerning [Twin Cedars'] current and recently discharged residents."  Doc.

21-2 ¶ 3.  On November 25, 2020, upon Lawson's request, she "shopped for supplies for Twin Cedars."  Docs. 15 at 67:25-68:14, 69:23-70:6; 21-2 ¶ 3.  This testimony is confirmed by a text message of a picture of the receipt for the supplies with a total from Lloyd to Lawson.  Doc. 21-4 at 2.  And for the pay periods including these dates, except for October 29, 2020, she only received sick, holiday, and vacation pay—not regular compensation.  Doc. 15-14 at 16-18.  She received no compensation for the pay period including October 29, 2020.  *Id*. at 16-17.  Twin Cedars does not dispute that Lloyd worked on at least four occasions.  Doc. 13-2 ¶¶ 21-23.  This is "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687.

Thus, Twin Cedars, not Lloyd, has failed to carry its burden under *Anderson*—it provided neither "evidence of the precise amount of work performed" nor "evidence to negat[e] the reasonableness of the inference to be drawn from" Lloyd's evidence.  328 U.S. at 687-88.  The absence of records is a failure of a FLSA duty delegated to Twin Cedars, not Lloyd.  *Id*. at 688 ("Due regard must be given to the fact that it is the employer who has the duty … to keep proper records of wages [and] hours … and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed."); 29 U.S.C. § 211(c) ("Every employer … shall make, keep, and preserve such records of the persons employed by him and of the wages [and] hours … and shall preserve such records for such periods of time.").  And under *Anderson*, Lloyd shall not suffer the consequences of her employer's failure to maintain records.  328 U.S. at 687.

Accordingly, Twin Cedars is not entitled to summary judgment on Lloyd's FLSA minimum wage claim.

## C. FMLA

As a preliminary matter, Twin Cedars argues it is entitled to summary judgment on Lloyd's FMLA claims because Lloyd failed to show she was "eligible" under the FMLA.  Doc. 13 at 16 n.7.  An employee is "eligible" under the FMLA if her employer, at the relevant time, had "at least 50 employees within a 75 mile radius of the worksite." *Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1254 (11th Cir. 2004); 29 U.S.C. § 2611(2)(B)(ii).

Lloyd testified that although she did not "know exactly how many employees Twin Cedars has," it maintained a "full house" during her shifts, meaning "about 50" employees—without counting counselors and other staff.  Doc. 15 at 84:13-16; 165:1-8. Twin Cedars contends her testimony "does not create a dispute of material fact."  Doc. 13 at 16 n.7.  Baloney.  Moreover, in its answers to Lloyd's interrogatories, Twin Cedars stated it "had a maximum of 213 employees working in 2020 and a maximum of 186 employees in 2021."  Doc. 21-11 at 3.  If Twin Cedars did not employ at least fifty employees within a 75-mile radius, it could have adduced evidence proving that point.  It did not.  Moreover, Twin Cedars provided Lloyd with FMLA benefits, which is compelling evidence that it knew she was eligible.  *See*, *i.e.*, Docs. 13-2 ¶ 17; 21-1 ¶ 17; 21-8; 21-9; 21-10.

Accordingly, Twin Cedars has not demonstrated that Lloyd was not an eligible employee, and the Court will consider the merits of Lloyd's FMLA retaliation and interference claims.

*1. Retaliation*

Twin Cedars argues it is entitled to summary judgment on Lloyd's FMLA retaliation claim because she cannot prove a prima facie case.  Doc. 13 at 18-19.

The FMLA prohibits "an employer from retaliating against its employee for engaging in activities protected" by the statute.  *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018).  To succeed on a retaliation claim, an employee must present either direct or circumstantial evidence of retaliatory intent.  In the absence of direct evidence, a plaintiff can rely on either the *McDonnell Douglas* burden-shifting framework or present a convincing mosaic of circumstantial evidence sufficient to create a triable issue of fact as to whether the defendant acted with retaliatory intent.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310-11 (11th Cir. 2023).  Regardless of the specific framework, the question ultimately is "whether the evidence permits a reasonable factfinder to find that the employer retaliated against the employee."  *Berry*, 84 F.4th at 1311.  Lloyd relies on circumstantial evidence to demonstrate retaliatory intent.  Doc. 21 at 22-23.

Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case of retaliation.  411 U.S. at 802.  If a plaintiff establishes a prima facie case of retaliation, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nonretaliatory reason for the employment action.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981).  This burden of production means the employer "need not persuade the court that it was actually motivated by the proffered reasons," but must produce evidence sufficient to "raise[] a genuine issue of

fact as to whether it [retaliated] against the plaintiff." *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)).

A plaintiff must then show that the employer's stated reason is in fact pretext for retaliation. *Kragor*, 702 F.3d at 1308. This may be done "either directly by persuading the court that a [retaliatory] reason more likely motivated the employer *or* indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*. at 1308-09 (quoting *Burdine*, 450 U.S. at 256) (emphasis added). Ultimately, the burden of persuasion rests with the plaintiff who must show that the proffered reasons for the employment action were pretextual— thereby permitting, but not compelling, the trier of fact to conclude that the employment action at issue was the product of impermissible retaliation.[11]

---

[11] It is commonly said that a plaintiff responding to an employer's motion for summary judgment must prove that the employer's legitimate, nondiscriminatory reasons ("LNRs") are "false, *and* that discrimination was the real reason" for the employer's action. *Ring v. Boca Ciega Yacht Club Inc.*, 4 F.4th 1149, 1163 (11th Cir. 2021) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)); *see, e.g., Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1352 (11th Cir. 2022); *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1298 (11th Cir. 2021); *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018); *Brooks v. Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). Taken literally, as defendants aggressively argue we should, this characterization suggests that to survive summary judgment the plaintiff must adduce direct evidence that an employer acted with discriminatory animus. That can't be right. *McDonnell Douglas* is all about proving intentional discrimination by circumstantial evidence; if an employee had direct evidence that the real reason for the adverse employment action was discrimination, the employee would have no need to resort to *McDonnell Douglas*. This characterization, purportedly based on *St. Mary's*, sounds a lot like the discredited "pretext plus" analysis. 509 U.S. at 515. A brief review of the relevant Supreme Court precedent illustrates this point.

First, *St. Mary's* was not a summary judgment case. *Id*. at 505. Rather at a *bench trial*, the plaintiff established that the employer's LNRs were false, but the fact finder nevertheless concluded that the plaintiff had not met his *trial* burden of proving that the employer had engaged in intentional discrimination. *Id*. at 508. The Eighth Circuit reversed, holding that the plaintiff, having proved the LNRs false, was entitled to judgment as a matter of law. *Id*. at 508-09. The Supreme Court granted certiorari to determine whether "the trier of fact's rejection of the employer's asserted reasons for its actions mandates a finding for the plaintiff." *Id*. at 504. The Court held that simply proving pretext, meaning that the plaintiff had successfully navigated *McDonnell Douglas*, did not entitle the plaintiff to judgment as a matter of law. *Id*. at 511. Rather, "rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, '[n]o additional proof of discrimination is *required*.'" *Id*. (footnote omitted). In short,

"A prima facie case of retaliation under the FMLA requires a showing that (1) the employee engaged in statutorily protected conduct, (2) the employee suffered an adverse employment action, and (3) there is a causal connection between the two." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010).  The causal connection element is satisfied if a plaintiff demonstrates that the decision-makers were "aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated."  *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008)

---

nothing the Court said in *St. Mary's* suggests that to survive *summary judgment*, a plaintiff must necessarily prove pretext and that discrimination was the real reason for the employer's action.

True, the Supreme Court stated that "a reason cannot be proved to be a 'pretext for *discrimination*, unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."  *Id.* at 515.  But the context of that statement is critical—the Supreme Court's point was that to prevail at trial the plaintiff must convince the fact finder that discrimination was the real reason for the adverse action.  Nevertheless, this language led some courts to require plaintiffs to prove pretext and to proffer additional evidence of discrimination to survive summary judgment.  *See Reeves v. Sanderson Plumbing Products., Inc.*, 530 U.S. 133, 140-41 (2000) (collecting cases).  This came to be called pretext plus.

In *Reeves*, the Supreme Court emphatically rejected pretext plus.  *Id.* at 147.  While the plaintiff must ultimately prove intentional discrimination, "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."  *Id.*  As a result, a plaintiff is not necessarily required to provide more than discrediting evidence alone to demonstrate discrimination.  *Id.* at 146 (emphasis added) ("[T]he Court of Appeals proceeded from the assumption that a prima facie case of discrimination, combined with sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory reason for its decision, is insufficient as a *matter of law* to sustain a jury's finding of intentional discrimination.  In so reasoning, the Court of Appeals misconceived the evidentiary burden borne by plaintiffs who attempt to prove intentional discrimination through indirect evidence.").  On the other hand, *Reeves* makes clear that proving the defendant's LNRs false did not necessarily mean the plaintiff would get to a jury.  *Id.* at 148 ("For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").  The ultimate inquiry is whether the evidence is sufficient to allow a reasonable jury to find that the reason for an adverse employment action was illegal discrimination.  The *McDonnell Douglas* framework "can help answer that question—but it cannot replace it."  *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 942 (11th Cir. 2023); *see also* Judge Newsom's persuasive concurrence in *Tynes*, 88 F.4th at 949-958.

Clearly, at the summary judgment stage, the plaintiff, in rebutting the employer's proffered LNRs, does not *necessarily* shoulder the burden of establishing falsity and that the real reason was discrimination.  Certainly, the plaintiff is not required to adduce direct evidence of intentional discrimination.  Rather, as the Eleventh Circuit has recently made clear, a prima facie case plus the falsity of the defendant's LNRs "*may* be enough to send the issue to a jury."  *Phillips v. Legacy Cabinets*, 87 F.4th 1313, 1326-27 (11th Cir. 2023) (emphasis added).  As the Supreme Court said in *St. Mary's*, "[n]o additional proof of discrimination is *required*."  509 U.S. at 511.

(quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000), *overruled on other grounds by Crawford v. Carroll*, 529 F.3d 961, 973-74 (11th Cir. 2008)).  "Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated."  *Bass v. Bd. of Cnty. Comm'rs*, 256 F.3d 1095, 1119 (11th Cir. 2001), *overruled in part on other grounds by Crawford*, 529 F.3d 961.

Here, Lloyd has established a prima facie case of FMLA retaliation.  She engaged in statutorily protected activity when she took FMLA leave; she suffered an adverse employment action when she was terminated; the decision makers, Phillips, Finely, and Lawson, were aware Lloyd took FMLA leave at the time of her termination; and the "close temporal proximity"—a little over a week[12]—between the end of her FMLA leave and her termination satisfies the causal connection prong.  *See* 29 U.S.C. § 2612(a)(1); *McCann*, 526 F.3d at 1376; *Bass*, 256 F.3d at 1119; *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1272 (11th Cir. 2017) ("[T]emporal proximity, for the purpose of establishing the causation prong of a prima facie case of FMLA retaliation, should be measured from the last day of an employee's FMLA leave until the adverse employment action at issue occurs."); Docs. 15 at 27:18-22; 15-7 at 1; 15-11; 15-12; 21-11 at 6.

And Twin Cedars can point to no legitimate, nonretaliatory reason for her termination.  Her termination letter and separation notice cited her FMLA leave status and the inability to accommodate her restrictions.  Docs. 15-11; 15-12.  The first reason is directly related to her statutorily protected activity.  Moreover, she informed Twin

---

[12] Or, as discussed below, the day after her FMLA leave ended.

Cedars she was able to return from her leave by December 8, 2020 and Twin Cedars terminated her before she was able to do so.  And the second reason, as previously discussed, is false.  Thus, this is not a situation where there is "mere temporal proximity."  *See McAlpin v. Sneads*, 61 F.4th 916, 927 (11th Cir. 2023) (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)).  And even if it was, temporal proximity can sometimes be enough where the length of time is "very close." *Thomas*, 506 F.3d at 1364 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).  Here, there was a little over a week.

On this record, a jury could reasonably conclude "that, but for her … exercis[ing] her FMLA rights, she would not have been fired."  *Lapham v. Walgreen Co.*, 88 F.4th 879, 895 (11th Cir. 2023); *Tynes*, 88 F.4th at 941 ("[T]he ultimate question in a discrimination case is whether there is enough evidence to show that the reason for an adverse employment action was illegal discrimination.").  Thus, Twin Cedars is not entitled to summary judgment on her FMLA retaliation claim.[13]

### 2. Interference

Lloyd argues Twin Cedars interfered with her FMLA rights in three ways: (1) she did not receive twelve weeks of leave, (2) Twin Cedars refused to reinstate her at the end of her leave, and (3) it failed to provide her with a designation notice.

"To succeed under a FMLA interference claim, the plaintiff must show only that [she] was 'denied a benefit to which she was entitled under the FMLA.'"  *McAlpin*, 61 F.4th at 933 (quoting *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1241 (11th

---

[13] The Court notes that Lloyd testified she did not think she was terminated because she took FMLA leave.  Doc. 15 at 191:22-24.  That testimony does not support her FMLA retaliation claim, but that evidence is for a jury to weigh, not the Court.

Cir. 2010)).  "Generally, 'the employer's motives are irrelevant' to an interference claim.'"

*McAlpin v. Sneads*, 61 F.4th at 933 (quoting *Batson*, 897 F.3d at 1331).

First, Lloyd argues that "[t]here is a genuine dispute of material fact as to whether [she] actually exhausted her FMLA leave."  Doc. 21 at 22.  Lloyd's FMLA leave began September 2, 2020.  Docs. 13-2 ¶ 16; 21-1 ¶ 16.  The FMLA allows eligible employees to "take up to twelve weeks of leave because of a serious health condition that renders the employee unable to perform the functions of her position."  *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1241 (11th Cir. 2021); 29 U.S.C. § 2612(a)(1). Lloyd's twelve weeks would have expired on November 25, 2020 had she not worked. However, considering the six days she worked, her leave expired on December 3, 2020. She was terminated December 4, 2020.  Doc. 15-12.  Thus, she was provided twelve weeks of leave.  *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1275 (11th Cir. 1999) ("[A] plaintiff suffers no FMLA injury when she receives all the leave she requests, and indeed is paid for most of it."); *Lapham*, 88 F.4th at 896 (holding a plaintiff's FMLA interference claim will fail if she cannot show "a harm that is remediable by either damages or equitable relief").

However, Lloyd is correct that there is a factual dispute as to whether Twin Cedars interfered with her FMLA right to be reinstated to her position after her leave expired.  Doc. 21 at 18.  Under the FMLA, an employee who takes FMLA is entitled to be restored to her position or an equivalent position.  29 U.S.C. § 2614(a)(1).  This right to reinstatement "is not absolute; an employer can deny reinstatement 'if it can demonstrate that it would have discharged the employee had [she] not been on FMLA leave.'"  *Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1267 (11th Cir. 2008)

(quoting *Strickland v. Water Works and Sewer Bd. of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001)).  Counting the six days[14] she worked, Lloyd's FMLA leave expired on December 3, 2020 and instead of reinstating her, Twin Cedars fired her the following day.  Nothing in the record permits the Court to find that the time for Lloyd's right to reinstatement passed.  Although there is no right to reinstatement when the employee takes more than twelve weeks of FMLA leave, that, a jury could find, is not what happened here.  Rather, Lloyd was fired, a jury could find, the day after her FMLA leave expired and after she, at Twin Cedar's request, had made arrangements to return to work.  Twin Cedars also could not argue that she would have been fired even if she had not taken leave, as explained previously.

Finally, Lloyd contends Twin Cedars was required to provide an FMLA designation notice because, "during Lloyd's FMLA leave, she was receiving compensation from sick leave, vacation leave, and holiday leave that she had accrued, [and] it would have been impossible without such designation notice for her to determine what type of leave [Twin Cedars] considered her to be on at various points during the leave, and as a result, when such FMLA leave was exhausted."  Doc. 21 at 20.  However, where—like here—"the hours, days, or weeks that will be counted against the employee's FMLA leave entitlement" is unknown "at the time the employer designates the leave as FMLA-qualifying," an employer is only required to provide a designation notice "upon the request by the employee."  29 C.F.R. § 825.300(d)(6); Doc. 21-10 at 2 (noting the "probable duration" of her leave was "4 weeks tentatively"

---

[14] Twin Cedars disputes Lloyd's assertion that she worked parts of six days.  Docs. 13 at 17-18, 22; 28 at 9-12.  The Court, of course, cannot resolve that factual dispute.  Notably, though, Twin Cedars does not argue that working, say, one hour of a day does not require that day to be excluded from an employee's FMLA leave calculation.

and there should be "no work until further notice").  Because Lloyd does not contend she requested a designation notice, Twin Cedars had no duty to provide her with one.

There is a dispute as to whether Twin Cedars denied Lloyd the benefit of reinstatement under the FMLA.  Thus, Twin Cedars is entitled to summary judgment only in part on Lloyd's FMLA interference claims.

## IV. CONCLUSION

Based on the record, a reasonable jury could conclude that Twin Cedars fired Lloyd because of her disability, that Twin Cedars fired her because she took FMLA leave, that Twin Cedars failed to pay her regular compensation for work performed during her leave, and that Twin Cedars interfered with her right to reinstatement under the FMLA.  Accordingly, Twin Cedars' motion for summary judgment (Docs. 13; 27) is **GRANTED in part and DENIED in part**.  Lloyd's ADA/Rehab Act disability discrimination based on adverse action, FMLA, and FLSA minimum wage claims can proceed to trial.

**SO ORDERED**, this 23rd day of January, 2024.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT